(117 App. Div. 21)

### NICHOLLS v. AMERICAN STEEL & WIRE CO.

(Supreme Court, Appellate Division. First Department. January 11, 1907.)

1. TRIAL—SPECIAL FINDINGS—VERDICT.

Where defendant failed to deliver wire contracted for within the contract term, and the jury found that the buyer's agent had never stated to any of defendant's agents that the specifications, orders, or directions as to shipments desired by the buyer under such contract would thereafter be furnished, as defendant contended, such finding, being justified by the evidence, was sufficient to sustain a verdict for plaintiff.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 872.]

2. SALES—CONTRACT—CONSTRUCTION.

A contract provided that plaintiff purchased and agreed to receive from defendant, and defendant agreed to sell to plaintiff, 400 barrels of No. 21 galvanized broom wire, to be made at the rate of 6 to 8 barrels a week; the entire quantity to be taken prior to January 6, 1902. Annexed to the contract were printed specifications, headed "Remarks," one of which declared that the purchaser should give to the seller specifications for goods covering shipments not less than 10 days before time of shipment. *Held*, that such latter clause referred only to the amount in excess of the contract rate of 6 to 8 barrels a week up to the contract quantity, and did not relieve defendant from the obligation to ship the weekly amount without further directions.

3. DAMAGES—BREACH OF CONTRACT—LOSS OF PROFITS—SALES.

Where, in an action for a seller's breach of a contract for the sale of broom wire, which plaintiff purchased to use in the manufacture of flexible tubing, plaintiff alleged that he was disabled from continuing his manufacture of tubing and compelled to stop the operations of his factory because of his inability to obtain the wire, in addition to loss of profits from contracts he was unable to fill, plaintiff was properly allowed damages to the extent of the loss of the rent of the factory and 6 per cent. interest on the capital invested therein during the time it was necessarily idle because of defendant's default.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 74, 79, 83, 88.]

Clarke and Scott, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Mark M. Nicholls against the American Steel & Wire Company. From a judgment of dismissal of the complaint after a trial to a jury, plaintiff appeals. Reversed, and judgment directed for plaintiff on verdict.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

George T. Hogg, for appellant.

Joseph P. Cotton, Jr., and George H. Bartholomew, for respondent.

INGRAHAM, J. The action was to recover the damages sustained by the plaintiff in consequence of a breach of a contract for the sale and delivery of galvanized broom wire. By the contract, a copy of which is annexed to the complaint, the defendant sold to the plaintiff 400 barrels No. 21 galvanized broom wire—

"Shipments to commence upon completion of present contract, to be made at the rate of 6 to 8 barrels per week; the entire quantity to be taken prior to June 1st, 1902. * * * Each month's shipment to be treated as a separate and independent contract. * * * Strikes, differences with workmen, accidents to machinery, and other contingencies beyond the control of the seller to be sufficient excuse for any delay in shipment traceable to such cause."

It is alleged that the prior contract was completed August 2, 1901, and that the defendant failed to deliver to the plaintiff during the weeks ending August 9, 16, 23, and 30, and September 6, 13, 20, and 27, 1901, 6 to 8 barrels in each week—in all, 48 to 64 barrels of wire—but delivered only during all of said weeks 6 barrels of wire, 2 of which were delivered on August 30, 1901, and the remaining 4 barrels on September 10, 1901, and utterly failed to deliver the balance of said 42 to 58 barrels of wire, and that—

"By reason of defendant's failure to deliver to plaintiff said regular weekly shipments of wire as provided in said contract plaintiff was unable to continue his manufacture of flexible tubing, and was compelled to stop the operations of his factory, and was unable to fill the orders of his customers, and by reason of the premises and defendant's failure to deliver as aforesaid suffered damages in the sum of nine thousand seven hundred and fifty dollars ($9,750.00)."

The answer admitted the making of the contract and that the prior contract was completed on August 2, 1901. It denied the allegations as to the delivery of the wire, and alleged that it delivered to the plaintiff 2 barrels of wire on August 22d, 4 barrels on August 31st, 6 barrels on September 20th, and 6 barrels on September 25th, and made other shipments under the contract, and as a separate defense alleged that it was understood between the parties that the plaintiff was to notify the defendant, from time to time, of the amount of wire it desired to be shipped; that the plaintiff did not notify the defendant that it desired any shipments to be made under the said agreement, otherwise than as such shipments were made by the defendant as particularly set forth; and that the defendant duly complied with the terms of the said agreement and made shipments of the wire therein mentioned as specified by the plaintiff.

The plaintiff testified that at the time the prior contract of October 5, 1900, was about completed, he went to the defendant's place of business at Cleveland, Ohio; and saw the defendant's representative; that he asked the defendant's representative if the defendant would pay attention "and ship me the wire on the new contract without any intermission whatever," and "he said he would"; that at that time there were 6 barrels more to be shipped on the old contract, and that was immediately shipped; that there was no place in the market to get No. 21 galvanized wire, except from the defendant; that it had to be made for the plaintiff, otherwise he could not get it; that the defendant's agent was taken over the plaintiff's factory and shown the plant, and was told that the plaintiff could not do anything without the wire; that when the contract of June, 1901, was made, the plaintiff told the defendant's agent that the plaintiff wanted a stated amount in the contract as to what was to be shipped by weekly shipments; that he expected to be very busy; that they had contracts to be delivered a little later, in September and October, one for 750,000 feet of tubing to be delivered before January, 1902, and specified other orders that he had; that the plaintiff had lost his trade, as he could not fill the orders.    There was other proof tending to show that, in consequence of the failure of the defendant to deliver the wires as required by the contract at the rate of from 6 to 8 barrels per week, the plaintiff was unable to manufacture the tubing.    Subsequently the court, upon motion of the defendant, struck out the evidence relating to the plaintiff's business and the order that he had when the contact was executed.    The plaintiff then proved the rent paid for his factory, with his investment in the business, and testified that during the month of August he got 6 barrels of wire from the defendant, and got no wire during the month of September; that, in consequence of the failure of the defendant to deliver the wire as called for by the contract, he was compelled to suspend his business and shut down his factory during the months of August and September.

The defendant's representative who made this contract on June 12, 1901, was called as a witness for defendant.    He denied the testimony of the plaintiff as to the conversation at the time the contract was made, and testified that the plaintiff told him that he could not put in any exact specifications as to the quantity to be shipped each week, but would let the defendant know about it later; that he called at the plaintiff's place of business about the 25th of June, when the plaintiff said that he was not ready to place the shipping order and would let defendant know about further shipments; that about August 19th he received an order for six barrels of wire to be shipped at once, but that the plaintiff's representative would give no standing order for shipments.    The letter from the plaintiff to the defendant of August 20, 1901, asking why the defendant had not shipped the plaintiff any wire under the contract, with the reply of the defendant on August 24, 1901, simply stating that 2 barrels had been shipped and the balance would follow promptly, rather sustained the plaintiff's version of the understanding at the time this contract was made.    If there had been any such understanding as testified to by the defendant's witnesses, the defendant, in answer to that inquiry, would have

stated that, as they were not to ship wire until ordered, no order having been given, no wire had been shipped.

The court submitted specific questions of fact to the jury, the first being:

"Did the plaintiff or his son, as his authorized representative, at some interview or interviews, during the month of August, 1901, state to any agent or agents of the defendant that specifications or orders or directions as to shipments desired by plaintiff under the contract of June 12, 1901, would thereafter be sent or furnished to the defendant?"

To this question the jury answered, "No," and that answer, being sustained by the evidence, I think justified a verdict for the plaintiff.

The defendant claims that under this contract they were only bound to furnish the wire as specifically ordered by the plaintiff. The typewritten portion of the contract, setting forth the understandings, provided that the plaintiff purchased and agreed to receive from the American Steel & Wire Company, and the said American Steel & Wire Company agreed to sell to the plaintiff, 400 barrels No. 21 galvanized broom wire, to be made at the rate of 6 to 8 barrels per week; the entire quantity to be taken prior to January 1, 1902. Annexed to this contract were printed specifications, headed "Remarks," and one of these was:

"The purchaser shall give to the seller specifications for goods covering shipments, not less than ten days before time of shipment."

The claim of the defendant is that this printed provision qualifies the obligation to ship weekly, so that the obligation of the defendant for the weekly shipments only commenced upon the date of the notification by the plaintiff. It will be noticed that the total amount sold was 400 barrels, and of these it was provided that 6 to 8 barrels should be shipped weekly. The express provision as to shipments in the contract would be a specification by the purchaser as to shipments of 8 to 10 barrels per week. Assuming that 8 barrels per week were shipped for the balance of the year, from August 2d to the 1st of the following January, there would be a considerable amount in addition that the plaintiff was bound to take, before the 1st of January, to make up the 400 barrels sold; and undoubtedly, under this provision, before the plaintiff could place the defendant in default for the additional amount, he would have to give the defendant direction as to shipments. There can be no doubt that, if the defendant had gone on shipping to the plaintiff 6 to 8 barrels per week, the plaintiff wou'd have been bound to receive them, even though he had not ordered them. So, I think, the defendant was required under the contract to ship to the plaintiff at least 6 barrels of wire per week, and a failure to ship this wire was a breach of the contract. The obligation to ship from 6 to 8 barrels per week was absolute, and the printed "Remarks" at the end of the contract would only refer to a case where the provision of the contract contained no specific obligation as to the shipments; for, where the contract expressly provided when the defendant was to ship the wire sold, no further directions were required.

The defendant gave testimony tending to show that, after the time at which these shipments were to commence, the plaintiff, in sub-

stance, requested a delay of the shipment, and that the defendant, acting on that request, had suspended shipments until it received directions from the plaintiff. If this was true, it would justify the defendant in suspending shipments and estop the plaintiff from claiming that such a failure to ship was a breach of the contract; but the jury has found against the defendant upon this question, and their verdict is controlling. Upon the finding of the jury upon this question submitted to them, therefore, I think the plaintiff was entitled to a verdict for the damages that he sustained in consequence of the failure of the defendant to deliver the wire as provided for by the contract.

The next question relates to the measure of damages. The plaintiff sought to recover from the defendant the profits upon contracts that it had lost in consequence of his failure to procure the wire which was necessary for the completion of the contracts. The court ruled that the plaintiff could not recover for any loss of profits upon these contracts, and, as the plaintiff does not complain of this ruling, it is not necessary to consider the question as to whether this item of damages was proper. The plaintiff, however, alleged, in addition to the damages in relation to the contracts with its customers, that by reason of the defendant's failure to deliver to the plaintiff the weekly shipments of wire, as provided for in said contract, he was unable to continue his manufacture of flexible tubing, and was compelled to stop the operations of his factory; and the court submitted to the jury the question as to whether the plaintiff was obliged to suspend the operation of its factory for some weeks by reason of the fact that he did not receive delivery of the wire from the defendant, and whether the plaintiff sustained damage by reason of such suspension of the operation of the factory, to which they answered, "Yes." The jury found that the plaintiff had sustained damages for loss of rent of $624.99 and 6 per cent. interest on the capital invested in this factory of $172.50, making a total of $797.49.

This finding was sustained by the evidence, and it seems to me that, the profits of the business being eliminated, as they had been by the ruling of the court, the plaintiff was entitled to recover these items of damages, which were the direct loss to him by the suspension of his business in consequence of the failure to receive the wire. The evidence showed that, if he had been able to continue his business, he would have been able to use the building and the machinery in carrying out the contracts for the tubing. By the breach of the contract the plaintiff's business was suspended, and during the period of suspension he was compelled to pay the rent, and lost the interest of the money invested in the factory, and was prevented from making the profits which would usually flow from a successful prosecution of his business. The building and the capital invested were rendered unproductive by reason of the breach by the defendant of the contract, and it seems to me that plaintiff was at least entitled to be repaid this money that he had been compelled to pay for the property which he was unable to use in the prosecution of his business by reason of the breach of the contract by the defendant.

There are no exceptions taken by the defendant in the case which would justify the court in ordering a new trial, and I think that the

judgment entered upon the dismissal of the complaint should be reversed, and judgment directed for the plaintiff upon the verdict, with costs in this court and in the court below.

PATTERSON, P. J., and LAUGHLIN, J., concur. CLARKE and SCOTT, JJ., dissent.